**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

-------------------------------------------------------------     **X**

**IN RE YASMIN AND YAZ (DROSPIRENONE)**     **3:09-md-02100-DRH-PMF**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**     **MDL No. 2100**

-------------------------------------------------------------

**This Document Relates to:**     **Judge David R. Herndon**

*Jessica Bagley v. Bayer Corp., et al*. No. 3:11-     ORDER DENYING REMAND
cv-20153-DRH-PMF

## I. INTRODUCTION

This action was commenced on August 5, 2011 in the Circuit Court of
Etowah County, Alabama for personal injuries allegedly suffered by the plaintiff as
a result of ingesting Yasmin and Ocella (a generic version of Yasmin).   Plaintiff, a
citizen of Alabama, brings claims against several non-Alabama entities involved in
the manufacture, promotion, and/or sale of Yasmin and Ocella ("pharmaceutical
defendants").   Plaintiff's original complaint also asserts a single claim against
Gregerson's Food's Inc. ("Gregerson's), the Alabama pharmacy that allegedly
caused "the Yasmin which in whole or part caused injury to the Plaintiff to enter
into the stream of commerce" (Doc. 1-1 p. 4).   The action was removed on the
ground that Gregerson's, the sole non-diverse defendant, was fraudulently joined
(Doc. 1).   Presently before the Court is plaintiff's motion to remand to state court

(Doc. 14). For the reasons discussed below the Court **DENIES** plaintiff's motion to remand.

## II. BACKGROUND

### A. STATE COURT ACTION, REMOVAL, AND MOTIONS TO REMAND

Shortly after plaintiff filed her complaint in state court, Gregerson's filed a motion to dismiss pursuant to Rule 12(b) of the Alabama Rules of Civil Procedure (Doc. 14 p. 17).[1] Gregerson's motion consisted of five sentences, contained no argument or explanation as to why dismissal was warranted, and did not cite to any case law (Doc. 14 p. 14). The motion requested an order dismissing plaintiff's claim against Gregerson's on the following grounds: (1) the original complaint failed to state a claim against Gregerson's for which relief could be granted; (2) the original complaint did not state a viable claim against Gregerson's; and (3) plaintiff's claims were barred by the relevant statute of limitations (Doc. 14 p. 14). Gregerson's also requested a hearing on its motion to dismiss (Doc. 14 p. 14).

On September 8, 2011 (without any hearing on the matter) Judge William H. Rhea issued an order summarily denying Gregerson's motion to dismiss and

---

[1] Rule 12(b) of the Alabama Rules of Civil Procedure provides in relevant part:
> Every defense . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19.

ordering Gregerson's to file an answer (Doc. 14 p. 18).[2]  On that same day, the state court action was removed to the United States District Court of Alabama, Northern Division (Doc. 1).[3]  The removing defendants contend that Gregerson's has been fraudulently joined and that diversity jurisdiction exists (Doc. 1). Approximately one week after removal, plaintiff filed a motion for remand to state court arguing that the amount in controversy was not satisfied and summarily arguing that Gregerson's was not fraudulently joined (Doc. 11).

While plaintiff's first motion to remand was pending, the case was transferred to this Court (Doc. 13).  Nine days later, plaintiff filed a revised motion for remand (Doc. 14).  Plaintiff's second motion for remand argues that the state trial court's order denying Gregerson's motion to dismiss establishes that plaintiff has asserted a viable claim against Gregerson's.  In addition, plaintiff contends that her action against Gregerson's is viable because it is filed pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").  Finally, plaintiff contends that the amount in controversy requirement is not met.  In response, the pharmaceutical defendants contend that any cause of action against

---

[2]  The order stated as follows:  "Gregerson's Foods, Inc.'s Motion to Dismiss is hereby DENIED and said Defendant is given thirty (30) days to answer" (Doc. 14 p. 18).

[3]  Plaintiff's motion to remand implies that the removal was somehow improper because the removing defendants did not seek the consent of Gregerson's – the defendant that has allegedly been fraudulently joined (Doc. 14 p. 2).  As a rule, of course, all defendants in a removed case that were *properly joined and served* at the time of the removal are required to consent to the removal; thus, the consent of a fraudulently joined defendant to removal is not required. See *Northern Ill. Gas Co. v. Airco Indus. Gases, Div. of Airco, Inc.*, 676 F.2d 270, 272 (7th Cir. 1982); *P.P. Farmers Elevator Co. v. Farmers Elevator Mut. Ins. Co.*, 395 F.2d 546, 547-48 (7th Cir. 1968).

Gregerson's is barred by the learned intermediary rule (Doc. 15). They also contend the state court's denial of Gregerson's motion to dismiss is irrelevant and that the amount in controversy requirement has been met (Doc. 15).

**B. ORIGINAL COMPLAINT, AMENDED COMPLAINT, AND MOTION TO DISMISS**

The plaintiff's original complaint (Doc. 1-1) asserts nine separate causes of action: (1) "Negligence and Negligence Per Se"; (2) "Products Liability – Unreasonably Dangerous Design"; (3) "Products Liability – Failure to Warn"; (4) Breach of Express Warranty"; (5) Breach of Implied Warranties"; (6) "Fraudulent Misrepresentation"; (7)"Fraudulent Concealment"; (8) "Negligent Misrepresentation"; and (9) "Fraud and Deceit." The original complaint states that plaintiff's claims are brought pursuant to the AEMLD (Doc. 1-1 p. 1). All nine causes of action are directed against "Defendants." The term "Defendants" is defined in the original complaint as "all named Defendants, with the exception of Defendant Gregerson's Foods' Inc" (Doc. 1-1 p. 5). In other words, the term "Defendants" includes the pharmaceutical defendants and expressly excludes Gregerson's.

The claim delineated as "Breach of Express Warranty" is the only claim directed against Gregerson's (Doc. 1-1 pp. 12-13). The breach of express warranty claim asserts that the pharmaceutical defendants made express representations regarding the safety and efficacy of Yasmin and Ocella and that Yasmin and Ocella did not and do not conform to the alleged express

representations (Doc. 1-1 p. 13). Plaintiff does not allege that Gregerson's made any express representations with regard to Yasmin and/or Ocella. As to Gregerson's, the express warranty claim alleges the following:

> Defendant Gregerson's conduct in this matter is actionable because as a distributor of the Yasmin, it failed to properly warn the Plaintiff of the dangerous and injurious side effects of the Yasmin product.

(Doc. 1-1 p. 13). The only other assertions with regard to Gregerson's are found in paragraph eleven in the subsection that identifies and defines the parties. Paragraph eleven identifies Gregerson's as an Alabama corporation and a distributor of Yasmin (Doc. 1-1 p. 5). Paragraph eleven further states that Gregerson's is a distributor of Yasmin as that term is defined in the AEMLD and that Gregerson's "through its actions caused the Yasmin which in whole or part caused injury to the Plaintiff to enter into the stream of commerce" (Doc. 1-1 p. 5).

On December 30, 2011, Gregerson's filed a motion to dismiss plaintiff's original complaint for failure to state a claim (Doc. 21). Thereafter, plaintiff filed her first amended complaint and a response to Gregerson's motion to dismiss the original complaint (Doc. 23). Plaintiff's first amended complaint redefines the term "Defendants" to include Gregerson's (Doc. 23 p. 5). Plaintiff re-asserts the same nine causes of action. For the most part, the claims are directed generically against "Defendants" (now defined to include Gregerson's). However, as with the original complaint, one paragraph in the breach of express warranty claim is directed specifically against Gregerson's. This paragraph again alleges that

5

Gregerson's conduct is actionable because it failed to warn the plaintiff of the subject drugs' dangerous side effects (Doc. 23 p. 13). In addition, three paragraphs in plaintiff's breach of implied warranties claim are directed against both "Defendants and Gregerson's" (Doc. 23 pp. 13-14).

In response to plaintiff's first amended complaint, Gregerson's filed a revised motion to dismiss (Doc. 26). Plaintiff responded to Gregerson's revised motion to dismiss on March 12, 2012 (Doc. 28) and Gregerson's filed a reply brief on March 28, 2012 (Doc. 29-1).

### III. PRELIMINARY MATTERS

#### A. POST REMOVAL AMENDMENT - EFFECT ON JURISDICTION

The Seventh Circuit has repeatedly indicated removal jurisdiction is determined at the time of removal and is not affected by post-removal events, including amendments to the pleadings. *See In re Burlington Northern Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) ("The well established general rule is that jurisdiction is determined at the time of removal and nothing filed after removal affects jurisdiction"); *Id.* at 380-381 (finding that jurisdiction under CAFA was secure "even though, after removal, the plaintiffs amended their complaint to eliminate the class allegations"); *Rising–Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (stating that "post-removal events-even an irrevocable promise not to accept more than the jurisdictional minimum-do not authorize remand of a suit that was within federal jurisdiction when removed"); *Tropp v.*

6

*Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004) (stating that "[t]here [was] … a reasonable probability that the amount in controversy at the time of removal exceeded $75,000" and the plaintiff's "original complaint, filed at the time of removal (not the subsequent amended complaint), is considered for jurisdictional purposes"); *Matter of Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (indicating that "a post-removal amendment to the complaint limiting the plaintiff's claim does not authorize a remand" and stating "[b]ecause jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint"). In addition, the Seventh Circuit has noted that "removal cases [unlike cases initiated in federal court] present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction." *In re Burlington Northern Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010).

In light of this precedent, the Court does not consider plaintiff's post removal amendments in assessing whether Gregerson's has been fraudulently joined and in deciding plaintiff's motion to remand. Rather, the only relevant allegations are those contained in plaintiff's complaint at the time of removal.

**B. EFFECT OF STATE COURT ORDER DENYING MOTION TO DISMISS**

Plaintiff argues the state court's denial of Gregerson's motion to dismiss demonstrates that plaintiff has asserted viable claims against Gregerson's.[4] Plaintiff's argument might hold more water if the state court's decision included conclusions of law with respect to Gregerson's liability. In addition, as noted above, Gregerson's motion did not contain any argument as to why the plaintiff's complaint fails to state a claim against Gregerson's. Considering the above, the Court cannot conclude that the state court's cursory denial says anything about Gregerson's liability under Alabama law.[5]

## IV. LEGAL AUTHORITY

**A. FRAUDULENT JOINDER PRINCIPLES**

"A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.* 577 F.3d 752, 763 (7th Cir. 2009). *See also Gottlieb*

---

[4] Plaintiff states that the trial court's denial of Gregerson's motion to dismiss amounts to a finding that plaintiff "could succeed in her claims against Gregerson's" and that this is "fatal" to the removing defendants' chance of success at removal (doc. 14 p. 4).

[5] Although the Seventh Circuit has not expressly addressed the issue, some district courts have held that a defendant waives the right to removal when the defendant takes action in state court that evinces an intent by the defendant to have the state court decide the case on the merits, such as by filing a motion to dismiss or asserting a counterclaim. *See e.g.*, Ellis v. Coventry Capital I LLC 2008 WL 4396349, *4 (N.D.Ill. Sept. 24, 2008) (Darrah, J.). The Court need not address the issue of waiver in the instant case because the removing defendants did not take any action in state court evincing such an intention. The motion to dismiss was filed by Gregerson's, the forum defendant, and not by the removing defendants.

*v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (collecting cases). "The 'fraudulent joinder' doctrine, therefore, permits a district court considering removal "to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur*, 577 F.3d at 763.

In the context of jurisdiction, "fraudulent" is a term of art. *See Poulosv. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). "Although false allegations of jurisdictional fact may make joinder fraudulent . . . in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success whatever the plaintiff's motives." *Id.* (collecting cases). To prove fraudulent joinder, the out-of-state defendant must "show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant.'" *Schwartz v. State Farm Mutual Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (*citing Poulos*, 959 F.2d at 73)). *See also Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011) (fraudulent joinder is present where the claim against the non-diverse defendant is "utterly groundless"); *Schur*, 577 F.3d at 764 (in a fraudulent joinder analysis, the "district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant"). Although a defendant bears a "heavy duty" in this regard, "it need not negate any possible theory that [the plaintiff] might allege in the future: only [the plaintiff's] present allegations count." *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 74 (7th Cir. 1992).

9

**B. ALABAMA LAW**

The AEMLD is the judicially created body of law governing product liability claims in Alabama. In essence, the AEMLD is a modified version of the strict liability set out in section 402A of the *Restatement (Second) of Torts. See Casrell v. Altec Indus.,* 335 So. 2d 128; *Atkins v. American Motors Corp.,* 335 So. 2d 134. The primary difference between the AEMLD and section 402A is that, unlike section 402A, the AEMLD does not impose a "no-fault" or strict liability concept. *Casrell,* 335 So. 2d at 132. Instead, it "adhere[s] to the tort concept of fault." *Id. See also Atkins*, 335 So. 2d at 137, 140. Thus, to recover under the AEMLD, it is not enough to simply show that a plaintiff took a drug and suffered a resultant injury. Instead, the plaintiff must show "fault" on the part of the manufacturer, supplier, or retailer. *Atkins v. Am. Motors Corp.,* 335 So. 2d 134, 139-140 (Ala. 1976).

"Fault" is established in an AEMLD action by showing that the manufacturer, supplier, or retailer sold the product in a defective condition. *Sears, Roebuck & Co., Inc. v. Haven Hills* Farm, 395 So. 2d 991, 994 (Ala. 1981). That is, "[t]he fault of the manufacturer, or retailer, is that he has conducted himself unreasonably in placing a product on the market which will cause harm"; the existence of a "dangerously unsafe chattel is negligence within itself." *Atkins*, 335 So. 2d at 140. To establish liability under the AEMLD a plaintiff must show:

(1) he suffered injury or damages to himself or his property by one who [sold] a product in a defective condition unreasonably dangerous to the plaintiff, as the ultimate user or consumer, if

    (a) the seller [was] engaged in the business of selling such a product, and

    (b) it [was] expected to and [did], reach the user or consumer without substantial change in the condition in which it [was] sold.

*Morguson v. 3M Co.*, 857 So. 2d 796, 800 (Ala. 2003) (citations and quotations omitted).

Although retailers may be subject to liability under the AEMLD, they are also afforded protection under the affirmative defense of lack of causal relation. Pursuant to this defense, a defendant – other than a manufacturer – may escape liability by:

> affirmatively show[ing] that it did not contribute to the defective condition, had no knowledge of it, and had no opportunity to inspect the product. In other words, there was no causal relation in fact between his activities in handling the product, and its defective condition

*Mathis v. Harrell Co., Inc.*, 828 So. 2d 248, 258 (Ala. 2002). The opportunity to inspect "must be a meaningful one. *Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So. 2d 922, 928 (Ala. 1994). If the defect was latent and could not have been discovered by either consumer or distributor there is no meaningful opportunity to inspect. *Id.* Under the lack of causal relation defense, a retailer that only distributes finished products will not be liable under the AEMLD where the retailer received the product in a defective condition, did not contribute to the

product's defective condition, and where no reasonable means of inspection could have revealed the alleged defective condition.   *See Id*. at 927-928.

In the instant case, the Court must also consider Alabama's treatment of prescription drugs in product liability actions.  The Alabama Supreme Court has concluded that prescription drugs are considered "unavoidably unsafe products" and are treated differently than standard products.  As explained by the Alabama Supreme Court in *Stone v. Smith, Kline & French Laboratories* 447 So.2d 1301, 1304 (Ala. 1984),[6] "in the case of an 'unavoidably unsafe' yet properly prepared prescription drug, the adequacy of the accompanying warning determines whether the drug, as marketed, is defective or unreasonably dangerous."  Thus, under *Stone*, with a properly prepared product, the element of "defect" in a drug case under the AEMLD turns on the adequacy of the warning that accompanied the product. *Id*.

The Alabama Supreme Court's decision in *Stone* turns the Court's attention to a second issue that must be considered in this case – the learned intermediary doctrine.  *Stone* marks the adoption of the learned intermediary doctrine in Alabama.  At issue in *Stone*, was whether a manufacturer's duty to warn extends beyond the prescribing physician to the physician's patients who would ultimately

---

[6]  In *Stone v. Smith, Kline & French Laboratories*, 447 So.2d 1301 (Ala. 1984), the Alabama Supreme Court adopted the learned-intermediary doctrine in a case addressing whether a manufacturer's duty to warn extends beyond the prescribing physician to the physician's patient who would ultimately use the drugs.  .

use the drugs.  The Alabama Supreme Court concluded that the manufacturer's

duty to warn does not extend beyond the prescribing physician:

> [W]here prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use ….Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a "learned intermediary" between manufacturer and consumer.

*Stone v. Smith, Kline & French Lab*., 447 So.2d 1301, 1304 (Ala. 1984) (*quoting*

*Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1276 (5th Cir. 1974)).

In *Walls v. Alpharma USPD, Inc*., 887 So. 2d 881, 882 (Ala. 2004), the

Alabama Supreme Court extended the learned-intermediary doctrine to

pharmacists dispensing prescription drugs.  The court held that the "learned-

intermediary doctrine forecloses any duty upon a pharmacist filling a physician's

prescription, valid and regular on its face, to warn the physician's patient, the

pharmacist's customer, or any other ultimate consumer of the risks or potential

side effects of the prescribed medication."  *Id*. at 886.  In so holding, the court

discussed the policies underlying the learned intermediary doctrine:

> The relationship between physician-patient-manufacturer applies equally to the relationship between the physician-patient and pharmacist. In both circumstances the patient must look to the physician, for it is only the physician who can relate the propensities of the drug to the physical idiosyncrasies of the patient. "It is the physician who is in the best position to decide when to use and how and when to inform his patient regarding risks and benefits pertaining to drug therapy." W. Keeton, R. Keeton & D. Owen, Prosser and Keeton on Torts § 96, at 688 (5th ed.1984)

13

*Walls*, 887 So. 2d at 885-86 (*quoting McKee v. American Home Prods. Corp.*, 113 Wash. 2d 701, 782 P.2d 1045, 1051 (1989)).  The Alabama Supreme Court subsequently explained that *Stone* and *Walls* "sought to prevent, asking the pharmacist to intrude himself or herself into the physician-patient relationship and requiring the pharmacist to give advice or take actions that he or she is neither licensed nor trained to give or take."  *Nail v. Publix Super Markets, Inc.* 72 So. 3d 608, 615 (Ala. 2011).[7]

## V.  ANALYSIS

### A.  AMOUNT IN CONTROVERSY

Plaintiff claims that she "suffered severe injuries and other damages" as a result of Yasmin and Ocella, "including but not limited to thirteen blood clots and pulmonary embolisms in her right leg, left arm and both lungs, two of which passed through her heart."  The complaint further describes plaintiff's injuries as "sever and permanent," including, "the inability to be on birth control in the future,. . . emotional distress, mental anguish, and. . . the potential for future thromboembolic events."  Plaintiff alleges "physical pain" and "diminished enjoyment of life," and claims her injuries are both "serious" and "life-threatening," allegedly requiring "lifelong medical treatment, monitoring, and/or medications."  Plaintiff also seeks punitive damages.  These alleged injuries make

---

[7] The Alabama Supreme Court has also noted that its decision in *Walls* was not expressly limited to product liability actions.  *Springhill Hospitals, Inc. v. Larrimore* 5 So. 3d 513, 518 n.8 (Ala. 2008).

14

it abundantly clear that plaintiff is seeking damages in excess of $75,000. *See Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011). Thus, the amount in controversy requirement is met.

## B. FRAUDULENT JOINDER

In her motion to remand, plaintiff states that her claim against Gregerson's if filed pursuant to the AEMLD, which allows "an aggrieved Plaintiff to bring a cause of action against the sellers (Gregerson's) of a defective product" (Doc. 14 p. 6). This seemingly simply assertion presents a slew of issues that the Court will attempt to address one by one.

Initially, the Court notes that plaintiff's complaint does not delineate which claims are brought pursuant to the AEMLD - other than to state that "[t]his is an action brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for strict products liability, breach of express and implied warranties, negligence, negligence per se, fraudulent suppression, fraudulent misrepresentation, fraud, and negligent misrepresentation." (Doc. 1-1 p. 1). The Alabama Supreme Court has recently indicated that individual common law or statutorily created causes of action are distinct from a claim under the AEMLD.[8]

---

[8] Until recently, Alabama courts and federal courts applying Alabama law frequently concluded that the AEMLD subsumed individual common law or statutorily created causes of action. *See e.g., Spain v. Brown & Williamson Tobacco Corp.*, 230 F. 3d 1300 (11th Cir. 2000). Thus, in product liability actions, claims for negligence or breach of warranty (for example) were frequently merged into a single cause of action under the AEMLD. *See Spain v. Brown & Williamson Tobacco Corp.*, 230 F. 3d 1300 (11th Cir. 2000). In 2003, the

15

Thus, the claims asserted in plaintiff's complaint would be alleged in addition to an AEMLD claim and not under the AEMLD. As to the assertion regarding "strict products liability," Alabama does not adhere to a system of strict product liability. As discussed above, the AEMLD is a modified version of strict liability, which has been described as a "fault based defective product theory." *Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 140 (Ala. 1976).

Another issue with plaintiff's position is that the only claim directed against Gregerson's is a claim for breach of express warranty. To establish a claim for breach of express warranty, a plaintiff must prove that a manufacturer or seller of a product made "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain." Ala. Code § 7-2-213(1)(a) (2002). Plaintiff does not allege that Gregerson's made any representation regarding the subject drug. Instead, plaintiff alleges that Gregerson's is liable for failing to warn her about the subject drug's potentially adverse side effects. Considering the allegations in the complaint, plaintiff cannot maintain a cause of action for breach of express warranty against Gregerson's.

---

Alabama Supreme Court issued two decisions rejecting the merger doctrine. *See Spain v. Brown & Williamson Tobacco Corp.*, 872 so.2d 101 (Ala. 2003) (tort claims for negligence and wantonness are not subsumed by the AEMLD; claim of breach of implied warranty of merchantability is distinct from an AEMLD claim); *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28 (Ala. 2003) (per curiam opinion answering certified question from the Eleventh Circuit finding that although there was no potential cause of action against the defendant cigarette retailers, there was a potential cause of action against the retailers based on negligence, wantonness, or civil conspiracy).

Finally, even if plaintiff had alleged a claim for failure to warn or a claim under the AEMLD against Gregerson's, her claims would have no reasonable chance of success. A failure to warn claim directed against Gregerson's would have no reasonable chance of success given the Alabama Supreme Court's decision in *Walls v. Alpharma USPD, Inc.*, 887 So. 2d 881, 882 (Ala. 2004), which extends the learned intermediary doctrine to pharmacies. With regard to an AEMLD claim, the Alabama Supreme Court has stated that, for cases involving prescription drugs, which are inherently unsafe, "the adequacy of [a drug's] accompanying warning determines whether the drug, as marketed, is defective, or unreasonably dangerous. *Stone*, 447 So. 2d at 1304. This decision, in conjunction with the extension of the learned intermediary doctrine announced in *Walls*, preclude liability under the facts of this case.

To the extent that plaintiff contends Gregerson's is liable under the AEMLD not because it is a pharmacy but because it is a distributor, the affirmative defense of lack of causal relation precludes liability. Plaintiff does not allege any action by Gregerson's as a retail store which contributed to the harm alleged. Nor does plaintiff allege any reasonable means of inspection by which Gregerson's should have – or even *could* have – discovered the allegedly defective nature of the subject drug. Accordingly, there is no reasonable possibility that an Alabama Court would subject Gregerson's to liability simply for its role in the chain of distribution. *See Mathis v. Harrell Co., Inc.*, 828 So. 2d 248, 258 (Ala. 2002); *Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So. 2d 922, 927-928 (Ala. 1994).

17

# VI. CONCLUSION

The only claim directed against Gregerson's is a claim for breach of express warranty. Because plaintiff has failed to allege any representation made by Gregerson's, her breach of express warranty claim has no reasonable chance of success. To the extent that plaintiff has stated a claim under the AEMLD or a common law failure to warn claim against Gregerson's, these claims have no reasonable chance of success for the reasons discussed herein. Accordingly, the Court disregards the citizenship of Gregerson's as a fraudulently joined defendant. The remaining defendants are completely diverse from plaintiff. Consequently, the court finds that it has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Accordingly, it is

**ORDERED** that the plaintiff's motion to remand is hereby **DENIED**.

**So Ordered**

Digitally signed by
David R. Herndon
Date: 2012.05.10
14:36:20 -05'00'

**Chief Judge**                  **Date: May 10, 2012**
**United States District Court**

18