UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------------ X

IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

3:09-md-02100-DRH-PMF

MDL No. 2100

------------------------------------------------------------

**This Document Relates to:**

*Jessica Bagley v. Bayer Corp., et al.* No. 3:11-cv-20153-DRH-PMF

**Judge David R. Herndon**

# ORDER

## I. INTRODUCTION

This action was commenced on August 5, 2011 in the Circuit Court of Etowah County, Alabama for personal injuries allegedly suffered by the plaintiff as a result of ingesting Yasmin and Ocella (a generic version of Yasmin). Plaintiff, a citizen of Alabama, brings claims against several non-Alabama entities involved in the manufacture, promotion, and/or sale of Yasmin and Ocella ("pharmaceutical defendants"). Plaintiff has also directed claims against Gregerson's Foods Inc. ("Gregerson's), the Alabama pharmacy that allegedly filled plaintiff's prescription.

On September 8, 2011, the pharmaceutical defendants removed the action to the United States District Court of Alabama, Northern Division on the basis of fraudulent joinder (Doc. 1). Approximately one week after removal, plaintiff filed

a motion for remand to state court arguing that the amount in controversy was not satisfied and summarily arguing that Gregerson's was not fraudulently joined (Doc. 11).

While plaintiff's first motion to remand was pending, the case was transferred to this Court (Doc. 13). Upon transfer, plaintiff filed a revised motion for remand (Doc. 14) and Gregerson's filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 21). Before the Court had an opportunity to rule on the claim of fraudulent joinder, plaintiff filed an amended complaint (Doc. 23). In response, Gregerson's filed a revised motion to dismiss seeking dismissal of the claims asserted in plaintiff's amended complaint (Doc. 26).

Because the Court's jurisdiction should be determined based on the facts existing at the time of removal and not upon post-removal developments, the Court only considered plaintiff's original complaint in assessing the claim of fraudulent joinder. On May 10, 2012, the Court, denied plaintiff's motion to remand, finding that Gregerson's had been fraudulently joined.[1]  Now before the Court is Gregerson's motion to dismiss plaintiff's amended complaint.

---

[1] Although not expressly stated in the Court's order denying remand, the Court's fraudulent joinder finding effectively dismissed Gregerson's from this action. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (standard for establishing fraudulent joinder is higher than the standard required for dismissal under Rule 12(b)(6)) (collecting cases). *See also Id*. at 763 (fraudulent joinder doctrine "permits a district court considering removal to disregard, for jurisdictional purposes, the citizenship of certain nondiverse

2

## II. ISSUE BEFORE THE COURT

The Court pauses momentarily to note that the true issue before the Court is whether plaintiff should be granted leave to amend in the first instance and not whether Gregerson's motion to dismiss should be granted. Pursuant to Federal Rule of Civil Procedure 15(a), if a responsive pleading has already been served, "a party may amend its pleading only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a). Here, several responsive pleadings had been served prior to the filing of plaintiff's amended complaint. Accordingly, amendment required written consent from the opposing parties or leave of court. Plaintiff obtained neither.

Thus, the issue before the Court is whether plaintiff should be granted leave to amend her complaint.[2] Generally, under Federal Rule of Civil Procedure 15(a), leave to amend should be freely granted where the ends of justice so require. Leave to amend should be denied, however, if the proposed amendment is futile. A proposed amendment is futile if the amended pleading would not survive a Rule 12(b)(6) motion to dismiss. *See, e.g., Arlin–Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011); *London v. RBS Citizens, N.A.*, 600

---

defendants, assume jurisdiction over a case, *dismiss the nondiverse defendants*, and *thereby retain jurisdiction*" (internal quotation marks omitted) (emphasis added). Nonetheless, the plaintiff's amended complaint and Gregerson's revised motion to dismiss must be resolved.

[2] As it turns out, this distinction makes no substantive difference in the Court's analysis. In assessing whether leave to amend should be granted, the Court looks to whether plaintiff's complaint could survive a 12(b)(6) motion to dismiss.

F.3d 742, 747 n. 5 (7th Cir. 2010); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).[3]

### III. ANALYSIS

#### A. ORIGINAL COMPLAINT

The plaintiff's original complaint (Doc. 1-1) asserted nine separate causes of action: (1) "Negligence and Negligence Per Se"; (2) "Products Liability – Unreasonably Dangerous Design"; (3) "Products Liability – Failure to Warn"; (4) Breach of Express Warranty"; (5) Breach of Implied Warranties"; (6) "Fraudulent Misrepresentation"; (7) "Fraudulent Concealment"; (8) "Negligent Misrepresentation"; and (9) "Fraud and Deceit." All nine causes of action were directed against "Defendants." The term "Defendants" was defined as "all named Defendants, with the exception of Defendant Gregerson's Foods' Inc." In other words, the term "Defendants" included the pharmaceutical defendants and expressly excluded Gregerson's.

---

[3] Arguably, an additional consideration in the instant case is whether, in light of the Court's fraudulent joinder finding, plaintiff's amended complaint constitutes the post-removal joinder of a non-diverse party. Joinder of non-diverse parties after an action has been removed to federal court is governed by 28 U.S.C. § 1447(e), which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." The Seventh Circuit has instructed that a court, when faced with a request to join non-diverse parties who would destroy subject-matter jurisdiction, has two options under § 1447(e): it may deny the motion to join; or it may grant the motion and remand. *Schur v. L . A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759 (7th Cir. 2009). In the instant case, application of these factors, would not lead to a different result. The Court finds that amendment would be futile and would deny leave to amend under both Rule 15(a) and under 28 U.S.C. § 1447(e).

4

The claim delineated as "Breach of Express Warranty" was the only claim directed against Gregerson's. The breach of express warranty claim asserted that the pharmaceutical defendants made express representations regarding the safety and efficacy of Yasmin and Ocella and that Yasmin and Ocella did not and do not conform to the alleged express representations. Plaintiff did not allege that Gregerson's made any express representations with regard to Yasmin and/or Ocella. As to Gregerson's, the express warranty claim alleged the following:

> Defendant Gregerson's conduct in this matter is actionable because as a distributor of the Yasmin, it failed to properly warn the Plaintiff of the dangerous and injurious side effects of the Yasmin product.

(Doc. 1-1 p. 13).

**B. Amended Complaint**

Plaintiff's amended complaint re-asserts the same nine causes of action but re-defines the term "Defendants" to include Gregerson's (Doc. 23). For the most part, the claims are directed generically against "Defendants." However, as with the original complaint, one paragraph in the breach of express warranty claim is directed specifically against Gregerson's. This paragraph again alleges that Gregerson's conduct is actionable because it failed to warn the plaintiff of the subject drugs' dangerous side effects. In addition, three paragraphs in plaintiff's breach of implied warranties claim are now directed against both "Defendants and Gregerson's."

5

## C. Warranty Claims

Plaintiff's claims for breach of express and implied warranty (Counts IV and V) are the only claims containing allegations directed specifically against Gregerson's. The breach of express warranty claim alleges that the "Defendants" made express representations to the public through their "aggressive marketing and advertising campaigns" and sales representatives. Although the term "Defendants" is defined to include Gregerson's, it is clear that these allegations could only be directed at the pharmaceutical defendants and not at Gregerson's. As to Gregerson's specifically, the breach of express warranty claim states that Gregerson's conduct is actionable because as a distributor of Yasmin, it failed to warn the plaintiff of the subject drug's dangerous side effects.

Plaintiff's breach of express warranty claim, as amended, would not survive a Rule 12(b)(6) motion to dismiss. Plaintiff fails to allege that Gregerson's made any affirmative act or promise that could be the basis of a claim for breach of express warranty. *See* Ala. Code § 7-2-213(1)(a) (2002) (to establish a claim for breach of express warranty, a plaintiff must prove that a manufacturer or seller of a product made "[a]ny affirmation of fact or promise ... which relates to the goods and becomes part of the basis of the bargain"). Further, the only conduct attributed to Gregerson's is its alleged failure to warn of the subject drugs' purported dangerous side effects. Alabama law clearly establishes that, as a

6

pharmacy, Gregerson's may not be held liable for such a claim. *See Walls v. Alpharma USPD, Inc.*, 887 So. 2d 881, 882 (Ala. 2004).[4]

Plaintiff's breach of implied warranty claim fairs no better. Gregerson's contends that the learned intermediary doctrine applies to foreclose any breach of warranty claims against pharmacies in Alabama. Plaintiff argues that the learned intermediary doctrine, a judicially created concept, is not applicable to breach of warranty claims brought pursuant to Alabama's version of the Uniform Commercial Code.[5] Plaintiff cites to no Alabama case law supporting her argument and Gregerson's directs the Court's attention to the Alabama Supreme Court's decision in *Stafford v. Nipp*, 502 So. 2d 702 (Ala. 1987).

In *Stafford*, the consumer of a prescription drug sued both her physician and the pharmacist who filled her prescription. The trial court granted summary

---

[4] Plaintiff contends and the Court agrees that the learned intermediary doctrine does not grant "unfettered immunity" to pharmacists in Alabama. However, Alabama case law clearly indicates that where a pharmacist correctly fills a valid prescription signed by a licensed physician no cause of action will lie. *See e.g., Stafford v. Nipp,* 502 So. 2d 702, 705 (Ala. 1987) (pharmacist subject to liability for filling a prescription without authorization from a doctor). In the instant case, there is no allegation that Gregerson's incorrectly filled the plaintiff's prescription or filed an invalid prescription. Absent such an allegation, the learned intermediary rule protects Gregerson's from liability.

[5] The Court notes that some courts have held the predominant purpose of a transaction between patient and pharmacist is the provision of services and not goods. *See e.g., In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prod. Liab. Litig.,* 692 F. Supp. 2d 1025, 1035-1037 (S.D. Ill. 2010) (Herndon, C.J.) (discussing Illinois law). As a result, these courts have concluded that specific UCC Article 2 provisions are inapplicable to such transactions. It seems, however, that Alabama courts would find UCC Article 2 provisions are applicable to transactions between pharmacist and patient. *See M.C. Skelton v. Druid City Hospital Board*, 459 So. 2d 818 (Ala. 1984).

7

judgment on the plaintiff's breach of implied warranty claim in favor of the pharmacist on the basis of the learned intermediary doctrine.  The Alabama Supreme Court reversed the grant of summary judgment but did so on the basis of the existence of disputed material facts.  Specifically, a factual dispute existed with regard to whether the pharmacist filled the prescription without valid authorization from the plaintiff's physician.  The court concluded that because the pharmacist may have filled the prescription without authority, a claim against the pharmacist could lie.  In so holding, the court stated that the learned intermediary doctrine does not "shield the pharmacist from liability based on breach of warranty where the pharmacist continues to fill the prescription without authorization from a doctor."  *Id*. at 705.  The clear implication is that, absent such actionable conduct, the learned intermediary rule does shield pharmacists from liability for breach of implied warranty claims.  As previously noted, in the instant case, there is no allegation that Gregerson's filled an invalid or unauthorized prescription.  Accordingly, there is no reason to conclude that the learned intermediary rule does not, as a matter of law, shield Gregerson's from liability for plaintiff's breach of implied warranty claim.

**D.  Remaining Claims**

The other seven causes of action are directed generically against "Defendants."  Unlike the plaintiff's original complaint, the plaintiff's amended

complaint defines the term "Defendants" as including "all named Defendants."[6] Despite this minor alteration in the definition of the term "Defendants," the Court cannot decipher whether plaintiffs intend to focus any of these claims on Gregerson's.[7] The bulk of the conduct attributed to "Defendants" in these claims is conduct that can only be connected to the pharmaceutical defendants. Further, the fact that plaintiff's breach of warranty claims contain allegations directed specifically against Gregerson's or "Gregerson's and Defendants" tends to indicate that only the breach of warranty claims are directed against Gregerson's.

Assuming that plaintiff is attempting to assert claims against Gregerson's under the AEMLD or under other common law tort concepts, these claims would be subject to dismissal pursuant to Rule 12(b)(6). As discussed above, Alabama law indicates that where a pharmacist correctly fills a valid prescription signed by a licensed physician, no cause of action will lie. *Walls v. Alpharma USPD, Inc.*, 887 So. 2d 881, 882 (Ala. 2004); *Stafford v.* Nipp, 502 So. 2d 702 (Ala. 1987).

To the extent that plaintiff contends Gregerson's is liable under the AEMLD not because it is a pharmacy but because it is a distributor, the affirmative defense of lack of causal relation precludes liability. Plaintiff does not allege any action by Gregerson's as a retail store which contributed to the harm alleged. Nor does plaintiff allege any reasonable means of inspection by which Gregerson's should have – or even *could* have – discovered the allegedly defective nature of the

---

[6] As already noted, in plaintiff's original complaint, the term "Defendants" included only the pharmaceutical defendants and expressly excluded Gregerson's.
[7] Particularly in light of the claims directed specifically against Gregerson's or against "Gregerson's and Defendants" in plaintiff's warranty claims.

9

subject drug. *See Mathis v. Harrell Co., Inc.*, 828 So. 2d 248, 258 (Ala. 2002); *Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So. 2d 922, 927-928 (Ala. 1994).

## IV. CONCLUSION

For the reasons discussed above, plaintiff's claims, as amended, would not survive a motion to dismiss. Accordingly, amendment would be futile and leave to amend is **DENIED**. Gregerson's is hereby **DISMISSED** from the action and plaintiff's amended complaint is **STRICKEN**.

**So Ordered**

Digitally signed by David R. Herndon
Date: 2012.05.18 16:13:10 -05'00'

**Chief Judge**  Date: May 18, 2012
**United States District Court**